# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK MALONEY and STEPHANIE MALONEY, | : |
| Plaintiffs | : CIVIL ACTION NO. 3:18-2268 |
| v. | : (JUDGE MANNION) |
| MT. AIRY #1, LLC and LIANNE R. ASBURY, | : |
| Defendants | : |

## MEMORANDUM

Before the court are defendants' motions to dismiss plaintiffs' amended complaint. (Doc. 26, Doc. 28). For the reasons stated below, defendants' motions will be **GRANTED**.

## I. PROCEDURAL HISTORY

On November 26, 2018, plaintiffs Mark and Stephanie Maloney ("plaintiffs") filed a complaint alleging negligent supervision, false light, intentional infliction of emotional distress, and tortious interference with existing and/or prospective contractual relationships. (Doc. 1). On March 12, 2019, defendants filed a motion to dismiss the plaintiffs' complaint (Doc. 6), along with a brief in support (Doc. 7).

After having been granted leave to amend their complaint, on July 16, 2019, plaintiffs filed an amended complaint again alleging negligent supervision, false light, intentional infliction of emotional distress, tortious interference with existing and/or prospective contractual relationships. (Doc. 25). In addition, the plaintiffs sought a declaratory judgment of their rights pursuant to 28 U.S.C.A. §2201. On July 29, 2019, defendants each filed a motion to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) (Doc. 26, Doc. 28), along with a brief in support (Doc. 27, Doc. 29, respectively). With all briefing completed, defendants' motions to dismiss are now ripe for disposition.

## II. FACTUAL BACKGROUND[1]

In plaintiffs' amended complaint, they allege that plaintiff Mark Maloney engaged in professional business and plaintiffs Mark and Stephanie Maloney engaged in personal enjoyment at Mt. Airy resort. Plaintiffs further allege that Mt. Airy was aware that plaintiff Mark Maloney regularly conducted business at Mt. Airy resort and used Mt. Airy's offerings to

---

[1] Accepting all well-pleaded facts as true, as the court must do on a motion to dismiss, the factual background is compiled using those facts which the plaintiffs allege in their amended complaint.

facilitate and further his regular business among his existing and prospective clientele. Plaintiffs are both members of Mt. Airy's Casino Players' Club.

Plaintiffs allege that on November 26, 2016 they went to Mt. Airy casino to have dinner at a restaurant located on Mt. Airy's premises. Several guests joined plaintiffs for dinner, including plaintiffs' son Michael Maloney ("Mr. Maloney") and his guest Priyanka Phalod ("Ms. Phalod"). Both Mr. Maloney and Ms. Phalod were over the age of twenty-one. Ms. Phalod is an Indian national and resident of Hong Kong. Upon arrival, Ms. Phalod presented her Hong Kong permanent resident card and her Optional Practical Training ("OPT") Work Authorization card. A Mt. Airy security officer stated that both forms of identification that Ms. Phalod presented were insufficient to establish her age. Plaintiffs allege that Ms. Phalod then offered to show the security guard a photo of her passport, but he refused to review the photo. Mr. Maloney informed the security officer that the two were meeting family for dinner at a restaurant and did not intend to participate in any gaming. In order to allow Ms. Phalod to proceed to the restaurant, the security officer informed Ms. Phalod that she would have to wear a yellow wristband which identified her as ineligible to participate in any activities on the casino floor. Once a yellow wrist band was placed on Ms. Phalod, the

two were escorted to the restaurant by at least one member of Mt. Airy's security staff.

At the restaurant, Mr. Maloney and Ms. Phalod were seated with their party, and the two ordered appetizers and cocktails. The waitress did not ask Mr. Maloney or Ms. Phalod for identification before taking their cocktail orders. The waitress delivered Mr. Maloney and Ms. Phalod their drinks without incident. At all relevant times, the wristband placed on Ms. Phalod's wrist by security remained in plain view. After delivering Mr. Maloney and Ms. Phalod their drinks, the waitress approached the table and asked the two for their identification. Mr. Maloney produced his driver's license and Ms. Phalod produced her OTP Work Authorization card and Hong Kong permanent resident card for the waitress to review.

Shortly after the waitress reviewed Mr. Maloney and Ms. Phalod's identification, the waitress returned to the table to warn plaintiffs and their guests that security was en route to their location. Within a few minutes at least one individual arrived at the restaurant. The individual was dressed in all black. This dress was similar, if not identical, to the member of Mt. Airy's security staff that plaintiffs interacted with earlier in the evening. A short time later, the individual approached the table and requested to see Ms. Phalod's identification. Mr. Maloney handed the individual Ms. Phalod's personal

identification and asked for an explanation for the security staff's actions. The staff member stated that Mt. Airy had an issue with Ms. Phalod consuming alcoholic beverages. Plaintiff Mark Maloney recorded portions of this exchange on his cell phone. Plaintiffs allege that when the security staff member found out that plaintiff Mark Maloney was recording their exchange, he attempted to physically block the phone's camera and demanded that the plaintiff stop recording. Plaintiff Mark Maloney explained his desire to continue recording the ongoing incident because of the security staff member's inexplicable behavior and intrusion upon his party's dinner. He expressed his dissatisfaction with how Mt. Airy was treating plaintiffs and their guests. The security staff member threatened to physically remove plaintiff Mark Maloney from the premises unless he immediately stopped recording the ongoing events.

Once Ms. Phalod's personal identification was returned to Mr. Maloney, he and Ms. Phalod started walking toward the exit of the restaurant. The security staff member followed closely behind the two. Plaintiffs allege that when Mr. Maloney and Ms. Phalod exited the restaurant, the two were met by four or five additional Mt. Airy security officers who followed them as they attempted to leave the facility. One of the security officers told the couple that they could not exit through the casino and would have to take a

different route which was longer. The security officers insisted on escorting them out of the casino via this alternate route. Plaintiffs, concerned for their son, followed the couple and security staff members to the exit.

Upon exiting Mt. Airy's facility, another individual dressed in black, presumably another member of Mt. Airy's security staff, approached the couple. Mr. Maloney requested the individual leave them alone because they were now outside of the facility. Plaintiffs allege that the individual then mocked them and told Mr. Maloney that his entire family would be banned from Mt. Airy. A different security officer told Mr. Maloney that the Pennsylvania State Police were on their way and instructed Mr. Maloney and Ms. Phalod to remain on the premises until the state police arrived.

When a state police trooper arrived, plaintiffs allege that a Mt. Airy security staff member falsely represented to the trooper that Ms. Phalod engaged in underaged drinking and attempted to defraud Mt. Airy by removing the yellow wrist band security placed on her wrist. Mr. Maloney then recited the events of the evening to the state police trooper and produced Ms. Phalod's identification. Ms. Phalod also showed the state police trooper her wrist to show that the yellow wrist band was still securely on her wrist. The state police trooper reviewed Ms. Phalod's personal identification and stated that the documents were valid proof of identity and

age. The state police trooper took notes about the incident, and plaintiffs and their guests were able to leave Mt. Airy's premises without further incident.

On December 5, 2016, plaintiffs and Mr. Maloney each received a letter stating that they were banned from Mt. Airy under threat of arrest and citation for criminal trespass. Defendant Lianne Asbury, Director of Security, signed each letter. The letter did not state the reason for the decision but stated that copies of the letter were being sent to the Pennsylvania State Police and the Pennsylvania Gaming Control Board.

The plaintiffs filed the instant action in which they allege that they were improperly excluded from Mt. Airy casino and later permanently banned from the premises under threat of criminal trespass. Plaintiffs raise five claims for relief in their amended complaint, which are as follows: (1) negligent supervision; (2) false light; (3) intentional infliction of emotional distress; (4) tortious interference with an existing or prospective contractual relationship and (5) declaratory judgment.

### III. LEGAL STANDARD

The defendants' motions to dismiss are brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which

relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544 at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit

to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## IV. DISCUSSION[2]

### a. Negligent Supervision

Count I of plaintiffs' amended complaint sets forth a claim of negligent supervision. The plaintiffs allege that defendant Mt. Airy was negligent in failing to train and supervise its employees and that Mt. Airy's negligence led to the deprivation of plaintiffs' constitutional rights. Based upon the following, defendants' motions to dismiss Count I of the amended complaint will be **GRANTED.**

In order to recover for negligent supervision under Pennsylvania law, "a plaintiff must prove that his loss resulted from (1) a failure to exercise ordinary care to prevent intentional harm by an employee acting outside the scope of his employment, (2) that is committed on the employers' premises, (3) when the employer knows or has reason to know of the necessity and ability to control the employee." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470,487-88 (3d Cir. 2013). A claim for negligent supervision covers the wrongful acts of employees which are outside the scope of their employment or not in furtherance of the principal's business. *Belmont v.*

---

[2] Defendant Asbury's motion to dismiss makes one legal argument and otherwise incorporates defendant Mt. Airy's arguments made in its motion to dismiss. Since defendant Asbury's motion incorporates defendant Mt. Airy's arguments, Mt. Airy's motion will be addressed first, followed by defendant Asbury's motion.

*MB Inv. Partners, Inc.*, 2010 WL 2348703 (E.D.Pa. June 10, 2010), *aff'd*, 708 F.3d 470 (3d Cir. 2013). *See also MDL Am. Investors Life Ins. Co. Annuity Marketing & Sales Practices Litig.*, 2007 WL 2541216 (E.D.Pa. Aug. 29, 2007). Nothing in the plaintiffs' amended complaint alleges that the actions of Mt. Airy's employees were outside of the scope of their employment or not in furtherance of Mt. Airy's business. As such, defendants' motions to dismiss Count I of the amended complaint will be **GRANTED**.

### b. False Light

Count II of the amended complaint alleges that defendants made false statements about plaintiffs to unspecified Mount Airy employees, the Pennsylvania State Police, and the Pennsylvania Gaming Control Board. Defendants move to dismiss plaintiffs' false light claim because plaintiffs have failed to plead publicity of private facts.

To establish an invasion of privacy/false light claim a plaintiff must show there was "publicity, given to private facts, which would be highly offensive to a reasonable person and which are not of legitimate concern to the public." *Rush v. Phila. Newspapers, Inc.*, 732 A.2d 648, 654 (Pa. Super. Ct. 1999). "'[P]ublicity' means 'that the matter is made public, by

communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Smith v. PNC Bank*, 2011 WL 2672013, at *5 (W.D. Pa. June 2, 2011), *report and recommendation adopted*, 2011 WL 2681245 (W.D. Pa. July 8, 2011) (citing *Doe v. Wyoming Valley Health Care System,* 987 A.2d 758, 765-66 (Pa.Super. 2010) (quoting Restatement (Second) of Torts §652D, Comment A and §652E, Comment A)). "Thus, it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life . . . to a small group of persons." *Id. see also*, *Gagliardi v. Experian Information Solutions, Inc.*, 2009 WL 365647, at *5 ("Communication to a few persons does not constitute the required publicity."). "[W]idespread dissemination, rather than mere publication, is required." *Id.* (citation omitted).

Here, plaintiffs allege that defendants made false statements about them; however, plaintiffs have failed to show widespread dissemination of the alleged false statements. Plaintiffs allege that false statements in connection with the events of November 26, 2016 were relayed to some unspecified Mt. Airy employees, the Pennsylvania State Police and the Pennsylvania Gaming Control Board. However, the plaintiffs' allegations do not reflect that the allegedly false statements were made public, i.e., were

"communicat[ed] . . . to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." As such, defendants' motions to dismiss Count II of plaintiffs' amended complaint will be **GRANTED.**

### c. Intentional Infliction of Emotional Distress

Count III of the amended complaint is a claim for intentional infliction of emotional distress ("IIED"), in which plaintiffs allege that defendants' conduct was "outrageous, intolerable, in discord with the accepted norms of society, and exceeded the bounds of common decency." (Doc. 25, p. 10). For the reasons stated below, defendants' motions to dismiss Count III of the amended complaint will be **GRANTED**.

The Pennsylvania Supreme Court recognized the Second Restatement of Torts §46 definition of IIED, which defines the tort as follows: "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Hoy v. Angelone*, 720 A.2d 745, 753 (Pa. 1998). Outrageous or extreme conduct is behavior so outrageous or so extreme as to go "beyond all possible bounds of decency, and to be regarded as atrocious,

and utterly intolerable in civilized society." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988). This high burden is difficult to satisfy under Pennsylvania law. *See Hoy*, 720 A.2d at 753-54. The Pennsylvania Superior Court has held that for conduct to rise to the level of outrageousness necessary for an IIED claim it must be such that "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'." *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa.Super.1997) (internal quotations removed). "Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct." *Hoy*, 720 A.2d at 754. *See e.g.*, *Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970) (defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46)).

In an IIED claim, the determination of whether the conduct is outrageous is a legal conclusion. *Bummell v. City of Harrisburg*, 2010 WL 3896382, *5 (M.D.Pa. 2010) ("'[I]t is for the court to determine in the first instance' whether the element of outrageousness has been met.") (citations omitted). Even if plaintiffs' allegations are accepted as true, the court need

not accept the plaintiffs' characterization of the defendants' conduct as outrageous. (*See Mankodi v. Trump Marina Associates, LLC*, 525 Fed.Appx. 161, 166 (3d Cir. 2013) (Other than a conclusory statement that he "suffered emotional distress, outrage, and mental suffering," Mankodi has not alleged what type of emotional distress he suffered, what symptoms he had, or what treatment, if any, he sought. Thus, he has not alleged sufficiently severe emotional distress to support a claim for either IIED.)). The bar for outrageous conduct is a high bar, defined by caselaw as conduct that goes "beyond all possible bounds of decency", and minor inconveniences will not meet this bar. *Hoy*, 720 A.2d at 754.

Plaintiffs allege a "host" of outrageous behavior on the part of the defendants, including: (1) casino employees escorting plaintiffs' guests to the restaurant after denying them access to the casino; (2) casino employees "intimidating" plaintiffs and their guests in the restaurant; (3) casino employees "inducing" plaintiffs and their guests to leave the restaurant; (4) casino employees "subjecting" plaintiffs and their guests to questioning by the state police; and (5) the casino permanently banning plaintiffs from the premises "for unspecified reasons." (Doc. 30, p. 8). Even accepting these allegations as true, none of the alleged behavior meets the high bar for defendants' conduct to be considered sufficiently outrageous for purposes of

stating a claim for IIED. Because plaintiffs have failed to allege such outrageous conduct, defendants' motions to dismiss Count III of the amended complaint will be **GRANTED**.

### d. Tortious Interference with Existing and/or Prospective Contractual Relationship

Count IV of the amended complaint alleges that defendants intentionally interfered with both existing and prospective contractual relationships between plaintiff Mark Maloney and third parties.

An action for tortious interference with an actual or prospective contractual relationship requires a showing of:

> (1) an actual or prospective contractual relationship;
> (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring;
> (3) the absence of privilege or justification on the part of the defendant; and
> (4) the occasioning of actual damages resulting from the defendant's conduct.

*Perma–Liner Indus., Inc. v. U.S. Sewer & Drain, Inc.*, 630 F.Supp.2d 516, 524 (E.D.Pa. 2008). The second element is sometimes stated as "purposeful action on the part of the defendant, specifically intended to harm the existing relation." *Remick v. Manfredy*, 238 F.3d 248, 263 (3d Cir. 2001)

(citing *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1987)). The second and third element of tortious interference are intertwined with the primary inquiry being whether or not the conduct was proper. *Corrections U.S.A. v. McNany*, 892 F.Supp.2d 626, 641 (M.D.Pa. 2012).

Defendants argue that plaintiffs have failed to allege any existing contracts that were interfered with because of defendants' actions. Defendants specifically cite *Centennial School District v. Independence Blue Cross,* 885 F.Supp. 683 (E.D.Pa. 1994). The court in *Centennial School District* dismissed plaintiff's claim for tortious interference with existing contractual relationships because plaintiff failed to identify what contractual relationships were threatened and did not even identify the type of contracts allegedly harmed. *Id.* at 688. This is analogous with what has occurred in this case. Plaintiffs have failed to allege any existing contracts that were interfered with because of defendants' actions and have not even alleged what types of contracts were harmed. Thus, defendants' motions to dismiss plaintiffs' claim for tortious interference with existing contractual relationships will be **GRANTED.**

Plaintiffs make the argument that the court in *Centennial School District* also states that "prospective contractual relationships are by definition more difficult to identify precisely." *Id*. The court does in fact state

this, but in this case, plaintiffs have still failed to allege enough facts to survive defendants' motion to dismiss. A "prospective contractual relationship is something less than a contractual right, something more than a mere hope." *Mifflinburg Telegraph, Inc. v. Criswell*, 277 F.Supp.3d 750, 797 (M.D.Pa. 2017). Under Pennsylvania law, "[p]laintiffs must present adequate proof of an objectively reasonable probability that a contract will come into existence." *Id.* "Plaintiffs need only demonstrate that it is reasonably probable that it would have obtained a contract, not that it was guaranteed to do so." *Id.*

Here, plaintiffs allege that plaintiff Mark Maloney would sometimes attend business conferences and schedule business meetings and meals at Mt. Airy resort. These alleged facts are not enough to establish "adequate proof of an objectively reasonable probability that a contract will come into existence." *Id.* Since plaintiffs fail to establish a showing of an "objectively reasonable probability that a contract will come into existence", they have failed to establish a prospective contractual relationship. *Id.* As a result, defendants' motions to dismiss plaintiffs' claim for tortious interference with prospective contractual relationships will be **GRANTED**.

### e. Defendant Asbury's Motion to Dismiss.

In light of the fact that this court will be dismissing all substantive counts of the plaintiffs' complaint, including the only counts in which defendant Asbury is included, i.e., Counts III and IV, defendant Asbury's motion to dismiss will be **GRANTED** as well.

## V. CONCLUSION

For the reasons stated above, defendants' motions to dismiss **(Doc. 26, Doc. 28)** will be **GRANTED**.[3] An appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 4, 2020**
18-2268-01.dox

---

[3] In light of the court's ruling on the plaintiffs' substantive claims, the plaintiffs' requests for declaratory relief and punitive damages need not be addressed herein.